http://www.va.gov/vetapp16/Files4/1630434.txt

Citation Nr: 1630434 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 10-22 848A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio

THE ISSUES

1. Entitlement to a disability rating in excess of 10 percent for post-operative residuals of right knee osteochondritis dissecans, to include traumatic arthritis.

2. Entitlement to a disability rating in excess of 10 percent for post-operative residuals of left knee osteochondritis dissecans, to include traumatic arthritis.

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

M. Caylor, Associate Counsel

INTRODUCTION

The Veteran served on active duty from September 1963 to August 1967. 

This case comes to the Board of Veterans' Appeals (Board) from a rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio. 

In October 2014, the Board denied entitlement to higher disability rating post operative residuals of right knee osteochondritis dissecans, as well as entitlement to a higher rating for post operative residuals of left knee osteochondritis dissecans prior to May 23, 2014. The question of entitlement to an increased rating for post operative residuals of left knee osteochondritis dissecans since May 23, 2014 was remanded. 

The Veteran appealed the Board's October 2014 decision to the United States Court of Appeals for Veterans Claims (Court). In June 2015 the Court granted a joint motion for partial remand vacating the October 2014 Board decision which denied entitlement to higher disability rating post operative residuals of right knee osteochondritis dissecans, as well as entitlement to a higher rating for post operative residuals of left knee osteochondritis dissecans prior to May 23, 2014. .

The Veteran testified before the undersigned during a May 2014 videoconference hearing. A transcript is associated with the record.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.

REMAND

More information is required before the Board can make a fully-informed decision in this case. The Veteran contends that his symptoms and functional limitations are primarily due to calcification of the meniscus in both knees. Hence, he argues that a disability rating under 38 C.F.R. § 4.71a, Diagnostic Code 5258 for dislocated semilunar cartilage is more appropriate. See April 2015 Response to Supplemental Statement of the Case. 

Medical evidence shows the Veteran has had a diagnosis of chondrocalcinosis, which involves calcium salts in the cartilage of the knee. See March and April 2009 VA Treatment Records; May 2010 and March 2012 VA X-Rays (also noting calcification of the meniscus); April 2012 VA Orthopedic Consult; May 2014 Cleveland Clinic X-Rays; DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 352 (32nd ed. 2012) [hereinafter DORLAND'S] (defining "chondrocalcinosis" as "the presence of calcium salts . . . in the cartilaginous structures of one or more joints"). 

The record also shows that the Veteran has had a diagnosis of osteochondritis dissecans, which involves inflammation of bone and cartilage. See March 2009 VA Treatment Records; January 2010 and May 2013 VA Examinations; DORLAND'S 1345 (defining "osteochondritis" as "inflammation of both bone and cartilage"; defining "osteochondritis dissecans" as "osteochondritis with splitting of pieces of cartilage into the joint, particularly in the knee joint").

While the appellant has also been diagnosed with degenerative joint disease and osteoarthritis, these diagnoses do not, on their face, involve calcification of cartilage, calcium deposits in cartilage, or chronic inflammation of bone and cartilage resulting in the splitting of cartilage into the knee joint. See DORLAND'S 532 (32nd ed. 2012) (defining "degenerative joint disease" as "osteoarthritis"); DORLAND'S 1344 (defining "osteoarthritis" as "a non-inflammatory degenerative joint disease seen mainly in older persons characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane"). 

The January 2010 VA examiner, however, opined that the Veteran's diagnosis had progressed from osteochondritis dissecans, a diagnosis defined as inflammatory, to degenerative joint disease, a diagnosis defined as non-inflammatory. 

Clarification regarding the Veteran's diagnoses, and attribution of his symptoms and functional limitations due to his service connected disorder is needed to allow the Board to determine which diagnostic code criteria best apply to the Veteran's bilateral knee disabilities, and whether he should be assigned additional separate disability ratings for inflammation of the cartilage in the meniscus.

Accordingly, the case is REMANDED for the following action:

1. Obtain any outstanding relevant treatment records from VA and any private treatment providers identified by the Veteran. If the RO cannot locate such records, the RO must specifically document the attempts that were made to locate them, and explain in writing why further attempts to locate or obtain any government records would be futile. The RO must then: (a) notify the claimant of the specific records that it is unable to obtain; (b) explain the efforts VA has made to obtain that evidence; and (c) describe any further action it will take with respect to the claims. The claimant must then be given an opportunity to respond.

2. Thereafter, schedule the Veteran for a VA examination of his right and left knees by a VA orthopedist. Provide the physician access to the Veterans Benefits Management System (VBMS) and Virtual VA electronic claims files. The physician must review the electronic claims files, including this Remand, and note such review in the report. All indicated studies and tests should be performed. If possible, the appropriate Disability Benefits Questionnaires should be used.

The physician must clarify the nature of any diagnosed knee disorder since December 2008. In so doing, the physician must address medical evidence that the Veteran has been diagnosed with chondrocalcinosis, calcification of the meniscus, osteochondritis dissecans, degenerative joint disease, and/or osteoarthritis. The physician must also comment on the January 2010 VA examiner's opinion that the Veteran's diagnosis had progressed from osteochondritis dissecans, a diagnosis defined as inflammatory, to degenerative joint disease, a diagnosis defined as non-inflammatory. A detailed medical explanation and rationale is required for any opinion offered.

The physician must distinguish, to the extent possible, the pertinent symptoms and functional limitations attributable to each of the Veteran's right and left knee disorders. See May 2015 Transcript of Record; May 2014 Cleveland Clinic X-Rays (narrowing of patellofemoral, medial and lateral joint spaces in left knee and narrowing of medial joint space in right knee); March 2015 VA Examination (reporting ongoing pain, stiffness, swelling; finding generalized tenderness to palpation, limitation of motion, objective evidence of crepitus, disturbance of locomotion, interference with standing); March 2014 Cleveland Clinic X-Rays (small suprapatellar effusion in right knee); September 2010 VA Physical Therapy (decreased flexibility, decreased strength, decreased endurance; positive patellar grind test); January 2010 VA Examination (endorsing heat, redness, giving way). If the symptoms caused by the varied diagnoses cannot be separated the examiner must so state and explain why.

The physician is advised that while the Veteran is not competent to provide a specific diagnosis or medical opinion, he is competent to report symptoms and functional limitations. The physician is further advised, however, that the terms competence and credibility are not synonymous.

A complete and fully explanatory rationale must be provided for any and all opinions expressed. If the physician examiner finds that the requested opinion cannot be rendered without resorting to speculation, he or she should so state, and should indicate whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e., no one could respond given the state of medical science and the known facts) or by a deficiency in the record (i.e., additional facts are required), or that the examiner does not have the necessary knowledge or training.

4. After the development requested has been completed, the RO should review any examination report to ensure that it is in complete compliance with the directives of this REMAND. If any report is deficient in any manner, the RO must implement corrective procedures at once. 

5. Then, readjudicate the claims. If any decision is adverse to the Veteran, issue a supplemental statement of the case, allow the appropriate time for a response, and then return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

_________________________________________________
DEREK R. BROWN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).